T.C. Memo. 1996-130


UNITED STATES TAX COURT


MIDWEST INDUSTRIAL SUPPLY, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7828-94.                      Filed March 18, 1996.


<u>Wayne R. Kaschak</u>, for petitioner.

<u>Anita A. Gill</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

FOLEY, <u>Judge</u>:  Respondent has determined deficiencies, additions, and an accuracy-related penalty with respect to petitioner's Federal income taxes as follows:

| | | Additions to Tax | | | | Penalty |
|------|------------|-------------------|-------------------|--------------|--------------|--------------|
| Year | Deficiency | Sec. 6653(a)(1)(A) | Sec. 6653(a)(1)(B) | Sec. 6653(a) | Sec. 6661(a) | Sec. 6662(a) |
| 1986 | $22,116 | $1,106 | [1] | -- | $5,529 | -- |
| 1987 | 21,873 | 1,094 | [2] | -- | 5,468 | -- |
| 1988 | 12,489 | -- | -- | $624 | 3,122 | -- |
| 1989 | 5,943 | -- | -- | -- | -- | $1,189 |

[1]50 percent of the interest due on $22,116.
[2]50 percent of the interest due on $21,873.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

This case presents the following issues:

1. Whether amounts claimed as advertising expenses by petitioner in 1986, 1987, 1988, and 1989 are ordinary and necessary business expenses pursuant to section 162. We hold that they are not.

2. Whether petitioner is liable for additions to tax for negligence and substantial understatement of income tax and for an accuracy-related penalty. We hold that petitioner is so liable.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioner is an Ohio corporation whose principal place of business was in Canton, Ohio, at the time the petition was filed. During the years in issue, petitioner manufactured deicing and dust control products. These products were used in coal mining, manufacturing, railroad, construction, and other operations in which dust and/or freezing weather is a problem.

Robert W. Vitale, the sole shareholder and director of petitioner, has had a longstanding interest in horses. During the 1970's, Mr. Vitale owned a horse farm known as Highspring Farm. Beginning in 1979, Mr. Vitale joined a number of equestrian organizations. He has served as president of the North American Trakehner Association and has been a member of the United States Dressage Federation, the United States Combined Training Association, and the Jumping Association. He has also written several articles on the breeding of

Trakehner horses. Around 1980, he sold Highspring Farm and began to board his horses with a fee-for-service operation in Nashville, Ohio. The boarding facility took care of feeding the horses, but Mr. Vitale continued to breed them.

On March 1, 1982, Mr. Vitale, acting in his capacity as petitioner's sole director, adopted a resolution authorizing petitioner to provide "sponsorship and advertising funds" to underwrite the costs of Mr. Vitale's equestrian activities. The resolution provided in relevant part:

> WHEREAS, Highspring Farm's name is to be changed and its activities are hereby transferred to Sussex Farm * * * in the hope that horses would be produced as a result of Sussex Farm's breeding operation which would achieve a national or world class level of performance under the name or names of the Corporation's products, such as Ice Free Nogarro, Ice Free Nobella, and Ice Free Czest, highlighting MIDWEST INDUSTRIAL SUPPLY, INC.'S winter line products under the trade names of Ice Free Conveyor, Ice Free Switch, etc., which is on a par with the finest products available,
>
> * * * * * * *
>
> IT IS HEREBY RESOLVED that in order for a corporate product line to be able to acquire the prestige associated with dressage, 3-Day, and show jumping and its current sponsors, the Corporation is authorized to provide the funds to acquire and/or breed horses in reasonable amounts necessary to support Sussex Farm, and further, Robert W. Vitale, as President, is hereby authorized to enter into contracts and leases and take other actions on behalf of the Corporation, to obtain the necessary facilities, horses, property, equipment and supplies to maintain Sussex Farm.

Notwithstanding this 1982 resolution, petitioner did not begin to sponsor Sussex Farm until 1986. In addition, the horses ultimately competed under such names as Nogarro and Czropa rather than "under the name or names of the Corporation's products".

During the 1986-89 period, Mr. Vitale's individual income tax returns included Schedule F, "Profit or Loss From Farming", which reported the income and expenses relating to his equestrian activities conducted under the name "Sussex Farm". Sussex Farm was not a farm but simply the name that Mr. Vitale used to conduct his equestrian activities.

In 1985, petitioner advertised through trade publications and product brochures and claimed an advertising deduction of approximately $11,000. In 1986, while continuing to advertise through trade publications and product brochures, petitioner also began to sponsor Sussex Farm. Prior to doing so, petitioner consulted with John Alan Cohan, an attorney specializing in equestrian matters, and was informed that petitioner's sponsorship of Sussex Farm might be deductible as an ordinary and necessary business expense. The terms of petitioner's sponsorship of Sussex Farm were not formalized in a written contract. Instead, Mr. Vitale, in his capacity as petitioner's sole director, determined how much to pay Sussex Farm. On its 1986, 1987, 1988, and 1989 tax returns, petitioner deducted advertising expenses in the amounts of $66,145, $66,323, $42,295, and $30,314, respectively. Of those amounts, the total advertising expenses attributable to payments to or on behalf of Sussex Farm in 1986, 1987, 1988, and 1989 were $55,850, $51,500, $35,206, and $20,650, respectively. In each of these years, the amount paid was equal to Sussex Farm's net expenses.

During the years in issue, Sussex Farm owned between 15 and 19 horses. Sussex Farm showed one horse in 1986 and two horses in 1987, 1988, and 1989 in various equestrian competitions. Whenever one of Sussex Farm's horses was shown, petitioner's name was announced over a loudspeaker as the sponsor of the horse.

On audit respondent challenged petitioner's advertising deductions relating to Sussex Farm, and petitioner in response discontinued its sponsorship of Sussex Farm in 1990.

OPINION

I. Deductibility of Petitioner's Payments to Sussex Farm

A. In General

The initial question before us is whether the payments in issue constituted deductible business expenses, as petitioner maintains, or

constituted payment by petitioner of its sole shareholder's personal expenses, as respondent maintains. This is a factual question, and the burden of proof rests with petitioner. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Two legal principles are central to this case. First, taxpayers may deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". Sec. 162. Second, transactions between closely held corporations and their shareholders are examined with special scrutiny. Electric & Neon, Inc. v. Commissioner, 56 T.C. 1324, 1339 (1971), affd. without published opinion 496 F.2d 876 (5th Cir. 1974); Georgiou v. Commissioner, T.C. Memo. 1995-546.

B. Qualification of Expenses as "Ordinary"

Deductions are not "ordinary" unless they bear a reasonably proximate relationship to the operation of the taxpayer's business. Deputy v. du Pont, 308 U.S. 488, 495-496 (1940). It is well established that, where the primary purpose of a corporate sponsorship is to pay an individual's personal expenses, the amounts expended are not deductible. See, e.g., W.D. Gale, Inc. v. Commissioner, T.C. Memo. 1960-191, affd. 297 F.2d 270 (6th Cir. 1961) (concluding that a corporate taxpayer could not deduct costs of a powerboat that bore the corporation's name and competed in races, because racing was primarily a hobby of the principal shareholder); Burrous v. Commissioner, T.C. Memo. 1977-364.

At trial, Mr. Vitale attempted to establish a nexus between petitioner's business and the advertising deductions by asserting that petitioner had sold dust control products to horse-related facilities as a result of its sponsorship of Sussex Farm. Mr. Vitale did not provide the purchasers' names or any documentary evidence to support this assertion. In short, Mr. Vitale has failed to persuade us that these sales were made.

Mr. Vitale operated Sussex Farm before the sponsorship arrangement began in 1986, and he continues even today to operate Sussex Farm. We believe that petitioner's 1982 resolution authorizing petitioner's sponsorship of Sussex Farm was a halfhearted attempt to legitimize as a corporate deduction the payment of Mr. Vitale's personal expenses. In fact, Mr. Vitale did not even follow the terms of his corporation's resolution. Although the resolution authorizing the sponsorship was predicated, in large part, on selecting horse names that refer to petitioner's products (e.g., "Ice Free Nogarro, Ice Free Nobella, and Ice Free Czest"), no such horse names ever were selected.

Because the primary purpose of the corporate sponsorship was to benefit Mr. Vitale personally, petitioner's deductions were not proximately related to the operation of its business. Mr. Vitale's ownership of a horse farm during the 1970's, his activity in several equestrian organizations, his authorship of articles on horse breeding, and his testimony at trial demonstrate that he has an ardent and longstanding interest in horses. Mr. Vitale would have pursued his equestrian activities whether or not petitioner "sponsored" his horses. We conclude that Mr. Vitale created this sponsorship arrangement in an effort to allow petitioner to pay (and deduct) all net expenses associated with his equestrian activities.

C. Qualification of Expenses as "Necessary"

Deductions are not "necessary" unless the taxpayer establishes that they are appropriate and helpful to its business. Carbine v. Commissioner, 83 T.C. 356, 363 (1984), affd. 777 F.2d 662 (11th Cir. 1985). In attempting to make this showing, Mr. Vitale made three claims: (1) Petitioner's name was announced over loudspeakers at horse shows as the sponsor of Sussex Farm's horses; (2) petitioner placed printed advertisements in the programs of a couple of shows; and (3) petitioner received a request for a price quotation

as a result of its sponsorship of Sussex Farm. These claims are unpersuasive for reasons we address below.

First, Mr. Vitale testified, and respondent has stipulated, that petitioner's name was announced at shows as the sponsor of Sussex Farm's horses. Mr. Vitale has not shown, however, that these loudspeaker announcements were helpful to petitioner's business. He did not testify that the loudspeaker announcements contained any information beyond petitioner's name (e.g., information about petitioner's products or the nature of its business) or that such announcements were reasonably calculated to help, or did help, petitioner's business. See, e.g., Schulz v. Commissioner, 16 T.C. 401 (1951) (concluding that a watchmaker-jeweler named Schulz could not deduct the costs of showing a horse called Schulztime, because the watchmaker did not advertise his business in the show program and failed to establish that the expenses were reasonably calculated to publicize or otherwise benefit his business).

Second, Mr. Vitale testified that petitioner had placed advertisements in the programs of a couple of shows. Petitioner did not, however, submit copies of any such advertisements. We are not convinced that petitioner placed these advertisements. Petitioner did submit a copy of an advertisement published in an equestrian magazine entitled "The Chronicle of the Horse" that referred to two Sussex Farm horses. The magazine, however, was dated August 24, 1990--after the period in issue and during the period when petitioner was under audit.

Third, Mr. Vitale testified that petitioner received a general contractor's request for a price quotation regarding one of petitioner's products. After receiving this request, Mr. Vitale wrote a letter dated April 11, 1994, asking the general contractor to indicate in writing that he contacted petitioner "as a result of Midwest's advertising in the equestrian field." In reply, the general contractor wrote a letter to Mr. Vitale dated

April 27, 1994, which stated that the request was prompted by petitioner's "advertisement in an equestrian publication." Respondent had been auditing petitioner's tax returns for several years and had issued its notice of deficiency almost 2 months prior to this exchange of letters. Nevertheless, neither letter connects the inquiry to the 1986-89 period, and such a connection is unlikely, because both letters were dated almost 5 years after that period. Moreover, petitioner advertised through trade journals, product brochures, and loudspeaker announcements during the years in issue. Petitioner did not advertise in equestrian magazines during those years. We thus conclude that the equestrian magazine advertisement mentioned by the general contractor in his letter did not relate to the 1986-89 period.

In sum, we conclude that petitioner entered into this sponsorship arrangement primarily to pay personal expenses of its sole shareholder and that petitioner was not reasonably likely to, and did not, benefit from its payments to Sussex Farm. Therefore, we hold that the payments in issue were not deductible as ordinary or necessary business expenses within the meaning of section 162.

II.    Applicability of the Additions to Tax and Accuracy-Related
       Penalty Provisions

We now consider the additions to tax and the accuracy-related penalty determined by respondent. As with the deficiency itself, petitioner bears the burden of proof. See Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791 (1972).

Section 6653(a), which is applicable to petitioner's 1986, 1987, and 1988 tax years, imposes an addition to tax for underpayments attributable to negligence or disregard of rules or regulations. For petitioner's 1986 and 1987 tax years, the additions to tax are equal to the sum of 5 percent of each underpayment and 50 percent of the interest payable on the portion of any underpayment attributable to negligence or disregard of rules or regulations.

Sec. 6653(a)(1)(A) and (B). For petitioner's 1988 tax year, the addition to tax is equal to 5 percent of the underpayment if any portion of the underpayment is attributable to negligence or disregard of rules or regulations. Sec. 6653(a). We have defined negligence in this context to mean "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967)).

Petitioner failed to meet its burden of proving that the underpayments were not due to negligence or disregard of rules or regulations. Petitioner contends that it is not responsible for the section 6653(a) additions to tax because it relied on a tax professional in creating the corporate sponsorship. To bolster its argument, petitioner cites Ewing v. Commissioner, 91 T.C. 396 (1988), affd. without published opinion 940 F.2d 1534 (9th Cir. 1991). In Ewing, the Tax Court declined to impose additions to tax under section 6653 where the taxpayers had "[relied] in good faith on the attorneys to formulate and implement" an arrangement. Reliance on a professional, however, will not shield a taxpayer from liability where the transaction giving rise to the deduction lacked substance or the expert's advice was ignored in material respects and was vague. In the present case, Mr. Vitale received a general letter from an attorney in California whom he had never met. There is no evidence in the record that (1) explains what information Mr. Vitale provided to the attorney or (2) indicates that the attorney either proposed or endorsed a particular plan. Thus, the attorney did not "formulate and implement" a plan, but appears merely to have provided broad comments on Mr. Vitale's idea. We have found that the sponsorship arrangement was designed primarily to benefit Mr. Vitale, not petitioner. Therefore, we hold that petitioner is liable for the section 6653(a) additions to tax.

Section 6661(a), which is applicable to petitioner's 1986, 1987, and 1988 tax years, imposes an addition to tax of 25 percent of any underpayment attributable to a substantial understatement of income tax. In the case of a corporate taxpayer, an understatement is substantial if it exceeds $10,000. Sec. 6661(b)(1). An understatement shall be reduced to the extent that it results from a reporting position for which substantial authority exists or to the extent that the item giving rise to the understatement was adequately disclosed on the return or on a statement attached to the return. Sec. 6661(b)(2)(B).

In light of our finding that petitioner's sponsorship was designed primarily to benefit Mr. Vitale, we hold that no substantial authority exists to support petitioner's reporting position. Nor was the deduction disclosed adequately on the return. Therefore, we hold that petitioner is liable for the section 6661(a) addition to tax.

Section 6662(a), which is applicable to petitioner's 1989 tax year, imposes an accuracy-related penalty of 20 percent of any underpayment attributable, inter alia, to (1) a substantial understatement of income tax (at least $10,000 for most corporations) or (2) negligence or disregard of rules or regulations. For the reasons described above, we find that the underpayment was attributable to negligence or disregard of rules or regulations. Therefore, we hold that petitioner is liable for the section 6662(a) accuracy-related penalty.

To reflect the foregoing,

Decision will be entered
for respondent.